This case involves a slip and fall accident. The plaintiff, Frances Louise Williams, appeals from a summary judgment in favor of the defendant, Sam Newton Insurance Agency. We reverse and remand.
Sam Newton owns and operates the Sam Newton Insurance Agency in Lexington, Alabama. On February 13, 1986, Williams parked her car in Newton's parking lot and entered his office through the front door. It is undisputed that Williams was a business invitee. As she left, after exiting the front door, she took two steps and slipped on a patch of ice and fell. Thereafter, she sued Newton for damages, alleging that Newton had negligently and/or wantonly failed to maintain his business premises in a reasonably safe condition and that his negligence and/or wantonness had caused serious injury to her. The trial court granted Newton's motion for summary judgment, and Williams appeals.
The question here is whether the summary judgment was proper. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P. All reasonable doubts as to the existence of a question of fact must be resolved in favor of the non-moving party. Fountain v. Phillips,404 So.2d 614 (Ala. 1981).
Williams's affidavit, in pertinent part, reads as follows:
 "On Monday, February 10, 1986, an ice storm struck the community of Lexington, Alabama. By Thursday, February 13, 1986, the ice had begun to melt, the roads were clear, and could be driven on.
 "On February 13, 1986, I drove to Sam Newton's Insurance Agency, not to use the phone, but rather to get Sam Newton to determine whether he could get me a homeowner's insurance policy. "I did not notice any ice when I drove into the parking lot of Sam Newton's Insurance Agency. I did not notice any ice when I got out of my car. I did not notice any ice as I walked from my car into the premises of Sam Newton's Insurance Agency.
 "While inside Sam Newton's Insurance Agency, no one warned me about either the presence or the possibility of the presence of ice just outside the door of the Agency, and I assumed it would be relatively safe around the entrance area.
 "When I left the Agency to go back to my car, I was watching where I was going. On about my second step outside the door, I slipped and had a hard sit-down fall on the pavement.
 "After I fell, I looked to see what had caused it, and noticed a clear patch of ice; but that ice was not visible unless you knew where to look for it. Mr. Newton assisted me after my fall, offering to buy me some new shoes since mine were damaged by the fall, and offering to let me use his telephone."
Newton's affidavit, in pertinent part, reads as follows:
 "The entrance to my insurance office consists of a front door and an asphalt paved area which opens into a parking lot.
 "On February 12, 1986, an ice storm struck the Lexington community and the area was coated with ice. There was ice on the roadways, on the trees, on houses, driveways, and in parking lots in the Lexington community. There was ice on the parking lot and the area near the entrance of my insurance office. The parking lot and entrance is paved with asphalt and is in good condition especially in the area directly in front of the entrance. The ice which covered the area during that time was readily visible and persons entering my office walked over the ice to enter.
 "On February 13, 1986, at approximately 1:00 p.m., Frances Louise *Page 20 
Williams came into my office to use the telephone. Mrs. Williams walked over the ice to enter my office. I was present at the office at the time and had talked with her. After Mrs. Williams left, I heard her say something outside and when I went outside she stood up and we talked together by her car for about fifteen minutes. I did not actually see Mrs. Williams fall. Mrs. Williams came back inside the building and removed mud from her coat and used the telephone again for about five minutes during which the whole time she stood. I asked Mrs. Williams if she was hurt and she said she was not injured.
". . . .
 "The snowy and icy weather conditions at the time Mrs. Williams claims to have fallen in my parking lot were evident to everyone in the Lexington community."
It is uncontroverted that prior to Williams's fall Lexington had experienced an ice storm that had left most of the town covered with ice, including the parking lot and entrance to Newton's office. However, the date on which the ice storm struck Lexington is in dispute. Williams claims that the ice storm occurred on February 10, 1986, and that ice had remained on Newton's premises for three and a half days prior to her slip and fall. Newton claims, however, that the ice storm occurred on February 12, 1986, and that ice had remained on his premises for only one day prior to Williams's fall.
Newton argues that he cannot be held liable for Williams's injuries because the iced condition of his entrance constituted a danger of which Williams was either aware or should have been aware. Williams, on the other hand, argues that she was not aware of the ice in front of Newton's door and that there was no reason she should have been aware of that ice. After reviewing both the evidence presented in support of and that presented in opposition to the motion for summary judgment, we conclude that Newton was not entitled to a judgment as a matter of law.
It is well established that an invitor is not liable for injuries to an invitee resulting from a danger that was known to the invitee or that the invitee should have observed through the exercise of reasonable care. If the danger is open and obvious, the invitor cannot be held liable. Lawson v. Williams,514 So.2d 882 (Ala. 1987); Newton v. Creative Dining FoodSystems, Inc., 492 So.2d 1011 (Ala. 1986); Quillen v. Quillen,388 So.2d 985 (Ala. 1980). In the present case, there is conflicting evidence as to whether Williams had actual knowledge of the ice at the entrance to Newton's office. Williams stated in her affidavit that she was not aware of the ice prior to the fall. Newton stated in his affidavit that the ice was readily visible and that people entering the office had been walking over the ice. Newton also relies on the following excerpt from Williams's deposition to support his argument that Williams was aware of the ice prior to her fall:
 "Q. Could you have walked around the ice when you went out the door?
"A. No, sir, I don't think I could.
"Q. So, it covered the area in front of the door?
"A. Yes.
 "Q. So, when you came in, you had walked over that same ice coming in?
"A. Yes. I was just lucky I didn't fall.
 "Q. It was lucky you didn't fall on the ice coming in?
"A. Yes." (Emphasis added.)
However, as previously stated, this Court must view the evidence in a light most favorable to Williams and resolve all reasonable doubts against Newton. Williams's testimony can be reasonably interpreted as simply an acknowledgement "after the fact" that she had walked over the ice as she entered Newton's office and that she had been lucky in not falling at that time. Williams's deposition testimony does not affirmatively show that she was aware of the ice as she entered Newton's office; therefore, a question of fact remains as to whether Williams actually knew about the ice prior to her fall. Thus, the question becomes whether she should have known that ice would be covering the entrance to Newton's office at the time of her visit there. Again, drawing those inferences *Page 21 
most favorable to Williams, one could find from the evidence that an ice storm had struck Lexington approximately three and a half days prior to her visit to Newton's office and that on the day of her visit the ice had already begun to melt and the roads were clear and driveable. We simply cannot conclude as a matter of law from this record that Williams, through the exercise of reasonable care, should have known that the ice would be present at the entrance to Newton's office on the day of her visit. The fact question presented in this case should be resolved by a jury; therefore, the judgment of the trial court is reversed, and the cause is remanded for trial.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.